COMPTOGRAPH COMPANY, Appellant, v. BURROUGHS ADDING MACHINE COMPANY, Appellee.

**PLEADING:** Irrelevant and Redundant Matter—Motion to Strike.
1   Irrelevant and redundant matter is properly stricken on motion. (Sec. 3618, Code, 1897.)

PRINCIPLE APPLIED: Plaintiff and defendant entered into a contract, by which was settled a claim made by plaintiff that defendant had infringed on a patent owned by plaintiff. A consideration was agreed on for past alleged infringements, and certain royalties were provided for the future; but plaintiff agreed in the contract to at once, at his own cost, institute test suits against other infringers, and obtain a decision establishing the validity of the patent. In an action on the contract for royalties alleged to be due, plaintiff pleaded *the divers sums necessarily paid out by it in instituting the test suits.* *Held,* wholly irrelevant and redundant, and properly stricken on motion.

**PLEADING:** Matters Provable Without Pleading—Circumstances
2   Preceding Contract—Motion to Strike. Facts and circumstances leading up to and attending the making of a contract may, within reasonable limits, be shown in evidence *without any pleading of such facts and circumstances.* Therefore, it is not prejudicial error to strike allegations of such matters.

EVIDENCE: Parol as Affecting Writing—Preliminary Negotiations—Erroneous Construction of Unambiguous Words. What *precedes* the making of a solemn written agreement, if not incorporated into it, is, in the absence of fraud, accident or mistake, conclusively regarded as intentionally rejected. And this· rule excludes evidence of a mutually erroneous construction placed upon plain and unambiguous language prior to the signing of the contract.

PRINCIPLE APPLIED: Plaintiff and defendant, on January 1, 1904, entered into a written contract. It was the outgrowth of plaintiff's claim that defendant was infringing on a patent owned by plaintiff.

The points of the contract, freely condensed, were:

1. Plaintiff agreed to bring a test suit against infringers, for the purpose of determining the validity of the patent and *"securing a monopoly of said invention to the parties hereto."*

2. Defendant agreed to pay $5,000 for machines manufactured prior to January 1, 1904.

3. Defendant was granted the right to manufacture said machines *"for the full term of said letters patent,"* etc.

4. It was contemplated that a final court decision would be secured by December 31, 1905, and defendant agreed to pay a scale of royalties during said two years, with proviso that defendant would pay plaintiff at least $10,000 in royalties during said two years, the first $5,000 mentioned above constituting a part of said $10,000.

5. Should final court decision be not secured ˙by December 31, 1905, defendant was to pay no royalties for machines manufactured between said date and the date when such decision ˙was secured. .

6. The contract provided: "This contract is based on · the assumption that the . . . letters patent are . . . valid in law . . . and will be given a construction (by the courts) which will secure to the parties hereto a . . . monopoly of the manufacture . . . of (said) machines . . . and is to be construed and enforced between the parties accordingly . . . and if said letters patent be declared invalid . . . said second party (defendant) *shall have the right to surrender the agreement and license and be relieved of any further obligations thereunder."*

7. The contract was not to˙ be construed to prevent defendant from manufacturing machines "which do not embody the invention described . . . in said letters patent as the same may be adjudicated . . . by the courts."

All royalties accruing up to December 31, 1905, amounting to $12,209, were paid. In August, 1906, a final court decision

was obtained, *declaring the patent invalid.* Thereafter, the defendant did not surrender the agreement, but continued to manufacture said machines, and refused to pay royalties, because it construed the contract as giving it the right to manufacture, without payment of royalties, after the courts invalidated the patent. Suit to collect royalties followed.

Plaintiff pleaded that the clause quoted in Paragraph 6 above was in a preliminary unsigned draft of the contract, and that plaintiff asked that it be so changed that the right to surrender the contract, in case the courts invalidated the patent, should be mutual; but that defendant refused to make the change, and, through its attorney, wrote a letter, saying that "said clause must remain as written, and defendant must have the sole right to determine, in the event the courts invalidated the patent, whether it should surrender the contract *or continue to pay royalties.*" Plaintiff pleaded that it signed the contract in reliance on defendant's interpretation, as shown by said letter, and that defendant so understood the contract when it was signed, and knew that plaintiff so understood it. No fraud, accident or mistake was pleaded.

*Held,* the contract plainly showed: (a) that defendant bought and paid for the unlimited right to manufacture said machine for the full life of the patent; and (b) that payment of royalties after December 31, 1905, was made to depend on the court's validating the patent; and, as a consequence, (c) that defendant's plea as to the said letter written by defendant, and as to the mutual understanding of both parties as to the meaning of the plain and unambiguous language of the contract, should be stricken on motion, because seeking to vary the plain terms of a written contract.

**CONTRACTS:** Construction — Conflicting Constructions of Plain Words—Statute Rule. The principle that, when the terms of an agreement have been intended in a different sense by the parties, that sense is to prevail against either party in which he had reason to suppose the other party understood it, has no application to contract provisions *couched and framed in plain and unambiguous words.* (Sec. 4617, Code, 1897.)

PRINCIPLE APPLIED: See No. 3.

**CONTRACTS:** Construction—Severable Contracts. Severable contracts are those the considerations of which are, by their terms, susceptible of apportionment or division on either side, so as to correspond to the several parts or portions of the consideration on the other side.

PRINCIPLE APPLIED: See No. 3. *Held,* the contract was severable, because clearly apportioning different considerations on one side to a corresponding consideration on the other, to wit: (1) Plaintiff first parted with a consideration, viz., settled its claim for machines manufactured prior to January 1, 1904, and granted to defendant the right to manufacture the machines during the future life of the patent; and for this consideration, defendant paid $12,209. (2) Plaintiff agreed to furnish another consideration, viz., a court decision *validating the patent,* and defendant, therefore, agreed to pay future royalties. Plaintiff, in the latter effort, failed, and the failure released defendant.

**CONTRACTS: Conditions Precedent—Partial Performance—Acceptance of Benefits—Effect.** Acceptance of the benefits of a partial but nonsubstantial performance of a condition precedent does not deprive the acceptor of the right, before he pays, to demand full performance of such condition.

Phrased differently, such acceptance does not cause the said condition precedent to cease to be available as such.

In yet further words, such acceptance does not convert the condition precedent into a warranty, in the narrow sense of a stipulation by way of agreement, for the breach of which compensation must be sought in damages.

PRINCIPLE APPLIED: Plaintiff claimed that defendant, in manufacturing certain machines, was infringing on a patent owned by plaintiff. They entered into a contract with reference thereto. Plaintiff agreed that he would bring test suits against other alleged infringers, for the purpose of securing a *final* decision validating the patent, and thereby securing a monopoly to plaintiff and defendant in the making of the machines. Defendant agreed that, if the plaintiff secured a final decision validating the patent, he would thereafter pay plaintiff certain royalties on machines manufactured by him. Plaintiff brought such action in the United States Circuit Court, and that court entered a decree declaring the patent valid. The defeated party at once appealed. Pending the appeal, defendant, though believing said decree would be reversed, and though intending to assist in securing such reversal, accepted all the benefits of said decree by extensively advertising said decree as a victory for plaintiff and himself, and thereby sought to deter, and did deter, other manufacturers from making the machines. Later, the Court of Appeals reversed the said decree and held the patent void, and this last decree became final. In plaintiff's action to collect royalties, *held* that defendant's acceptance of the benefits of the first decree did not prevent him from insisting on the full performance by plaintiff

of the condition precedent, to wit, the agreement to secure a *final* decree validating the patent.

**CONTRACTS:   Waiver—Waiver of Condition—Hostile Attitude of Contracting Party.**   One who is under contract obligations to pay royalties in the manufacture of machines in the event that the court holds certain alleged patents on the machine valid, may appear before the court in the test suits and contend for the invalidity of the patents without in any wise lessening his rights under the contract.

**PLEADING:   Motion to Strike—Pleading Stricken Matter.**   A pleading is properly stricken on motion when such pleading consists of a repleading of matters already stricken on motion.

*Appeal from Polk District Court.*—CHARLES A. DUDLEY, Judge.

MONDAY, OCTOBER 2, 1916.

REHEARING DENIED MONDAY, JANUARY 22, 1917.

THIS is an action at law to recover $500,000 for royalties alleged to be due on a license contract made between the plaintiff and the American Arithmometer Company, the defendant's assignor. .The appeal is by plaintiff from a holding of the district court, sustaining, in part, defendant's motion to strike parts of plaintiff's petition, and from the ruling of the district court in sustaining defendant's demurrer to the remainder of the amended fourth count, and sustaining defendant's motion to strike an amendment to said amended fourth count.   Plaintiff appeals.—*Affirmed.*

*Eugene H. Garnett, Clinton L. Nourse* and *John W. Munday,* for appellant.

*Cummins, Hume & Bradshaw* and *James C. Davis,* for appellee.

PRESTON, J.—The original petition consists of four counts.   The plaintiff filed an amended fourth count.   De-

fendant filed a motion to strike parts of the amended fourth count, which was sustained in part; and thereafter, defendant filed a demurrer to said amended fourth count, which was sustained, and also a motion to strike the first, second and third counts, which was sustained as to the first and second, and plaintiff dismissed the third count. Plaintiff then filed an amendment to the amended fourth count, which was stricken on defendant's motion. Counsel for appellant state in argument that no effort will be made to secure a reversal because of the action of the district court in striking the first and second counts. On the motion to strike portions of the amended fourth count, the court, by its ruling, expunged therefrom Paragraphs 4, 6, 8, 9, and Paragraph 10, except the first $4\frac{1}{4}$ lines thereof, Paragraphs 24, 25, 26 and 28, and the portions of Paragraphs 14 and 35 relating to the cost to plaintiff of prosecuting certain suits. The only issues in the case for determination here are issues of law arising upon motions to strike, and the ruling on the demurrer, but the record is quite complicated.

Some of the grounds attacking the ruling upon the demurrer are predicated upon error of the lower court in striking parts of the counts in question. We take it that, if the court was correct in its rulings on the motion to strike, the correctness of its ruling upon the demurrer, in holding that plaintiff is not entitled to any relief against the defendant, follows naturally.

The contract sued upon is as follows:

"Memorandum of agreement, entered into this twentieth day of January, 1904, between the Comptograph Company, a corporation organized and existing under the laws of Illinois, and having its principal office and place of business at Chicago, in said state, as first party, and the American Arithmometer Company, a corporation organized and existing under the laws of the state of Missouri, and having its principal

office and place of business at the city of St. Louis, in said state, as second party.

"Whereas, said first party is the owner of letters patent of the United States No. 628,176, issued July 4, 1899, to Dorr E. Felt for an improvement in tabulating machines, said invention relating more particularly to adding machines equipped with transversely-movable wide-frame paper carriages, and of all rights and privileges of whatsoever nature thereunder, and of all claims and causes of action for any past infringement of said letters patent; and

"Whereas, said second party has been, and is now, engaged in the manufacture and sale of adding machines employing transversely-movable wide-frame paper carriages, which are claimed by the first party to embody a material part of the invention described and claimed in said letters patent, and to infringe said letters patent.

"Now, therefore, in consideration of the payment of the sum of $5,000 in cash by said second party to said first party, upon the execution of this instrument, said parties have agreed, and do hereby agree, as follows:

"1.   Said first party hereby releases and discharges said second party and its agents and customers and all purchasers and users of its said adding machines from all claims of whatsoever nature which said first party may have against them or either of them under said letters patent, on account of the adding machines manufactured by said second party prior to the first day of January, 1904, and hereby licenses the further use and sale of each and all of said machines (including all unsold machines said second party had on hand January 1, 1904), under said letters patent, for the full term thereof without further charge.

"2.   Said first party hereby grants to the said second party and its successors and assigns, from and after January 1, 1904, the sole and exclusive right, license and privilege (except as hereinafter specified) to manufacture, use and sell

machines embodying the invention described and claimed in the aforesaid letters patent throughout the United States and the territories thereof, and Canada, and for export to other foreign countries, for the full term of said letters patent, and any extension or re-issue thereof which may be hereafter granted. Said first party reserves to itself and excludes from this license the right for itself and its successors and assigns to manufacture, use and sell machines embodying the invention described and claimed in said letters patent throughout the United States and the territories thereof, and Canada, and for export to foreign countries, for the full term of said letters patent, and any re-issues or extensions thereof which may be hereafter granted. Said first party further reserves to itself, and excludes from this license, the sole and exclusive right to manufacture, use and sell adding machines embodying the features of the aforesaid invention which relate to mechanism for automatically returning the paper and for automatically locking the machine when the bottom of the paper is reached, it not being intended by this license to grant to the second party any right to use those features of the patented invention.

"3. Said first party agrees to promptly bring suit upon said letters patent against existing and future infringers thereof, and to diligently and vigorously prosecute such suit or suits to a final determination, for the purpose of judicially determining the scope and validity of said letters patent and of suppressing infringements thereof, and securing a monopoly of said invention to the parties hereto.

"4. Said second party agrees, upon the terms and conditions herein specified, to pay the first party the following royalties upon all machines embodying the invention described and claimed in said letters patent which said second party may manufacture on and after the first day of January, 1904, and during the full term of said letters patent, and all re-issues and extensions thereof:

"a. On all machines manufactured by the second party during the pendency of the first suit of the aforesaid litigation, and prior to a final determination thereof, the sum of one dollar per machine.

"b. On all machines manufactured by the second party after a final determination of the first suit of said litigation which shall result in an adjudication establishing the validity and scope of said letters patent in such manner as to control and monopolize under it all adding machines employing transversely-movable wide-frame paper carriages of the general nature and purpose of the machines now being manufactured by the parties hereto, the sum of $10 per machine until an aggregate royalty at that rate of the sum of $200,000 shall have been paid by the second party to the first party.

"c. On all machines manufactured by the second party after the payment of said sum of $200,000, and during the remainder of the term of said letters patent and any re-issues and extensions thereof, the sum of $5 per machine.

"5. Said second party agrees to pay the first party a minimum sum of $10,000 prior to a final determination of the first suit of the aforesaid litigation, on account of the royalties provided for in Clause 4 hereof, but the payment of $5,000, upon the execution of this instrument as hereinbefore provided, shall be considered a part of and an advance payment upon said sum of $10,000. Said final determination of the first suit shall be secured, if possible, on or before December 31, 1905, but if not had by such date, party of the second part shall be relieved of the payment of any royalties whatever upon any machines manufactured by it between December 31, 1905, and the date when such final determination shall be had.

"6. Said second party agrees to keep true, full and accurate account, in books provided for that purpose, of all machines manufactured by the second party under this license and contract, and to render to the first party, within

10 days after the first days of January, April, July and October, in each year (excepting January, 1904), a full, true and accurate report, under oath if requested in writing by the first party, of all machines manufactured by the second party under this contract and license during the preceding three months, and to accompany such reports with remittance of full amount of royalties due the first party hereunder; and said books of the said second party, containing a record of the machines manufactured by it under this contract and license, shall be open at all reasonable times to the inspection of the first party and its representatives.

"7.    This contract is based upon the assumption that the aforesaid letters patent are good and valid in law, and that they can be and will be sustained by the courts, and given a construction which will secure to the parties hereto a substantial monopoly of the manufacture, use and sale of all adding machines employing transversely-movable wide-frame paper carriages, and is to be construed and enforced between the parties accordingly; and if, as a final result of the litigation hereinbefore mentioned, or as a final result of any subsequent litigation upon said letters patent, said letters patent shall be declared invalid, or shall be so construed by the court as to fail to substantially cover and control all adding machines employing such transversely-movable wide-frame paper carriages, then, and in such event, said second party shall have the right to surrender this agreement and license, and be relieved of any further obligations thereunder.

"8.    Said second party shall not be precluded or estopped by this contract and license from manufacturing, using and selling adding machines which do not embody the invention described and claimed in said letters patent, as same may be adjudicated and construed by the courts, but shall at all times have the same right and liberty of manufacturing, using and selling machines not embodying said invention as have other persons not parties hereto.

"In witness whereof, the parties hereto, by their respec-

tive officers and representatives thereunto duly authorized, have affixed their signatures and corporate seals this........ day of January, 1904.

"(Seal)              ·         COMPTOGRAPH COMPANY,
                                        "Robert Tarrant, President.
"(Seal)                        AMERICAN ARITHMOMETER CO.,
                                        "By Joseph Boyer, President.
"Attest:   H. B. Wyeth, Secretary.
"Attest:   B. G. Chapman, Secretary.

"The undersigned, Dorr E. Felt, and Felt & Tarrant Manufacturing Company, former owners of the letters patent referred to in the foregoing instrument, do hereby ratify and confirm said instrument, and the release and license under said letters patent therein embodied, to the full extent of our interest in the subject-matter thereof.

"(Seal)                        ' DORR E. FELT,
                                        "FELT & TARRANT MFG. CO.,
                                                "D. E. FELT, Pres.
"Attest:   C. J. DeBerard, Sec'y."

The amended fourth count is quite voluminous. 26 pages of the abstract are taken up in printing it, and in addition thereto 12 pages of the abstract are taken up in printing drawings and printed specifications of the patent, which are made part of the petition. It would be less laborious to print the amended fourth count in full, but we feel we would not be justified in doing that, although it is difficult to state the matter to show clearly the connection between the parts stricken and the remainder of the count without doing so. Appellant, in argument, gives a precise analysis of the allegation of the count in question, and also states in a general way the facts therein alleged, which general statement and plaintiff's claim are set forth substantially thus: About January 23, 1904, the plaintiff entered into the contract sued upon, with the American Arithmometer Company. In January, 1905, the defendant succeeded the American Arithmo-

meter Company, plaintiff claiming that the last named company was reorganized as the Burroughs Adding Machine Company. By the contract in suit, the plaintiff licensed the defendant's assignor, under letters patent of the United States, No. 628,176, to construct adding machines employing transversely-movable wide-frame paper carriages. It is by means of this device only that adding machines can list two or more columns of figures side by side. The contract provided that the licensor should sue existing and future. infringers, to the end that the patent might be construed and a monopoly be thereby acquired for the benefit of the licensor and the licensee. It was provided that the licensee should pay the following royalties on all machines embodying the described invention manufactured by the licensee after January 1, 1904, and during the full term of the letters patent: (a) $1 per machine on all machines manufactured during the pendency of the first suit of the proposed litigation against infringers (provided that no royalty should be payable subsequent to December 31, 1905, and prior to the end of the first suit of the proposed litigation); (b) $10 per machine after the patent had been sustained and a monopoly thereby secured, and until $200,000 had been paid; (c) thereafter, $5 per machine.

It is contended by appellant that, under a proper construction of the contract, it provides that, in order to release the licensee from further obligations in case the final result of the first litigation or of any subsequent litigation should be adverse to the patent, the licensee must surrender the license. Defendant denies that such is the proper construction of the contract. Defendant's assignor prepared the contract, and, in the negotiations preceding its execution, certain letters were written, one of which plaintiff claims had the effect to charge the licensee with a continuing liability for royalties, even though the patent should be declared invalid in the first or any subsequent suit of the litigation, unless the licensee surrendered the license. Relying upon such a

construction of the contract, the plaintiff executed it. Pursuant to arrangement between the parties, the plaintiff immediately started suit against an alleged infringer known as Universal Accountant Machine Company, the name of which company was changed, pending suit, to Universal Adding Machine Company.

The suit against the infringer proceeded to a hearing in the United States Circuit Court, and the patent was sustained. The decree was of such a character that, if sustained, it would have established a monopoly of all adding machines employing transversely-movable wide-frame paper carriages. When the decree was entered sustaining the patent, the Universal Adding Machine Company immediately perfected an appeal to the United States Circuit Court of Appeals. Plaintiff claims that the defendant in this case thereupon, still believing the patent to be invalid, decided that it would advertise the decree as its victory, accepting all the benefits that it could get from the decree, and then join with the infringer in an attempt to have the decree reversed; that the defendant, during the time it was accepting the benefits of the decree, and while it was advertising the decree as sustaining the patent and as establishing a monopoly for the benefit of the plaintiff and defendant, was engaged in the preparation of a brief to be filed by it in the United States Court of Appeals as *amicus curiæ*, attacking the validity of the patent, and asking that the decree be reversed; that the defendant continued its campaign to secure the benefits of the decree of the United States Circuit Court, until after it had filed its brief in the Court of Appeals. On August 11, 1906, the Court of Appeals decided that the patent was invalid, and an unsuccessful attempt was made to take the case to the Supreme Court of the United States. So that the decision of the Court of Appeals was final. When the Court of Appeals held the patent invalid, the plaintiff concluded that the action of the defendant in filing its brief was ground for considering that defendant had abandoned

its rights under the license, and that its further manufacture of machines constituted an infringement. The plaintiff thereupon sued the defendant for infringement of the patent, and defendant set up its license from plaintiff as a defense, and it was held that this plea was good, and that the act of defendant in filing its brief in the Court of Appeals did not constitute an abandonment of the license. After the decision of the Court of Appeals in the Universal Company case, the plaintiff brought suits for infringement of said patent against Adder Machine Company, a corporation of New Jersey, and Adder Machine Company, a corporation of Pennsylvania. The defendant company, after August 11, 1906 (the date when the patent was held invalid by the Court of Appeals), and prior to January 1, 1911, manufactured 63,946 adding machines under the license, but has paid no royalty on any machines manufactured since December 31, 1905. It is alleged that neither the American Arithmometer Company nor the defendant, its successor, has surrendered or offered to surrender the license in question, but insists that it is in full force and effect. Plaintiff contends that, in view of the provision of the contract making, as it claims, a surrender of the license a condition precedent to relief from the obligation to pay royalties, and because of the waiver of further performance resulting from the action of the defendant company in accepting the benefits of the decree of the United States Circuit Court, and then interposing its opposition to the affirmance of that decree, it brought this suit to recover royalties due, as it claims, on the contract.

We see no way to avoid setting out in full the parts stricken. They are:

"(4) Plaintiff further avers that the American Arithmometer Company, a corporation organized under the laws of the state of Missouri, assignor of the defendant Burroughs Adding Machine Company, as hereinafter set forth, was, in the year 1900, engaged in the making and selling of adding machines employing transversely-movable wide-frame paper

carriages, that were claimed by the Felt & Tarrant Company to be an infringement upon said letters patent to Felt, and that said American Arithmometer Company was, in the year last mentioned, notified by or on behalf of said Felt & Tarrant Manufacturing Company to desist from such infringement; that said American Arithmometer Company continued to make and sell said machines after assignment of said letters patent to the plaintiff, and until about 7,000 of said machines had been made and sold by said American Arithmometer Company; that said machines were sold by said American Arithmometer Company for $325 each and upwards; that, in January, 1904, more than nine tenths of the adding machines in course of manufacture and sale by American Arithmometer Company, and more than nine tenths of all the adding machines in course of manufacture and sale by all manufacturers of adding machines, employed transversely-movable wide-frame paper carriages, and were claimed by plaintiff herein to be infringements upon claims, 1, 2 and 4 of said letters patent.    (Stricken as irrelevant, redundant and immaterial.)

"(6) That, prior to January 20, 1904, the plaintiff had begun the manufacture, under said Felt patent, of adding machines employing transversely-movable wide-frame paper carriages, and had invested practically all of its capital in tools, dies, special machinery, machinery and manufactured machines, and was not in a financial position to engage in patent litigation with infringers of said Felt patent; that, in view of said financial condition of the plaintiff, and its consequent inability to prosecute infringers, plaintiff was willing to accept from said American Arithmometer Company, as a consideration for a license under said Felt patent, the royalties mentioned in the contract hereinafter set out, although the highest royalty therein mentioned, namely, $10 per machine, was then and ever since has been and now is much less than a reasonable royalty for a license under said Felt patent

to use transversely-movable wide-frame paper carriages on adding machines. (Stricken, as irrelevant, redundant, impertinent and immaterial.)

"(8) Plaintiff further avers that, prior to and at the time of the execution of said contract, the general counsel of said American Arithmometer Company, in its patent matters, was one Edward Rector, who was also a director of said company. That said Edward Rector prepared, in behalf of said American Arithmometer Company, a draft of the aforesaid contract, prior to its execution by either of the parties. That Paragraph 7 of said draft prepared by said Edward Rector was, in words and figures, precisely like paragraph numbered 7 of the draft of said contract as finally executed, except that, at the plaintiff's suggestion, the word 'final' was inserted in said Paragraph 7 of said contract before the words 'result of the litigation hereinbefore mentioned,' and before the words 'result of any subsequent litigation;' that, during the negotiations between the plaintiff and said American Arithmometer Company concerning the provisions of the proposed contract between the parties, the plaintiff requested the Arithmometer Company to agree that Paragraph 7 of the proposed contract, as drafted by Rector, be amended so as to provide that either of the parties to the contract should have the right to surrender the license; that American Arithmometer Company declined so to do, and, on January 22, 1904, and before the execution of said contract by plaintiff, said American Arithmometer Company, acting through its attorney, Edward Rector, advised the plaintiff in writing that the option in Paragraph 7 must be left to the licensee as to whether, in the event the patent should be declared invalid or narrowly construed, it should surrender the contract or continue to pay royalty; that said American Arithmometer Company stated in said writing that it did not see how there could be any objection to this arrangement. (Stricken, as irrelevant, redundant and immaterial, and as seeking to explain and change a written instrument.)

"(9) Plaintiff further avers that, after the receipt of said writing, and relying upon the construction placed on said Paragraph 7 by said American Arithmometer Company, the plaintiff, on or about January 23, 1904, executed and delivered said contract which had theretofore been executed by American Arithmometer Company. (Stricken, as irrelevant, redundant and immaterial, and as seeking to explain and change a written instrument.)

"(10) Plaintiff further avers that, since the organization of the Burroughs Adding Machine Company, in January, 1905, at least nine tenths of its business has consisted of the manufacture and sale of adding machines employing transversely-movable wide-frame paper carriages; that said business has been enormously profitable; and that the capital of said Burroughs Adding Machine Company has been increased from $5,000,000 to $5,500,000; and that said Burroughs Adding Machine Company, since August 11, 1906, has paid from $500,000 to $700,000 per year in cash dividends; and that its earnings have been greatly in excess of dividends paid; and that the value of said stock today is about $20,000,000; and that at least nine tenths of all the profits made by the Burroughs Adding Machine Company have been made by the manufacture and sale of adding machines employing transversely-movable wide-frame paper carriages. (All after the word "carriages" in the first clause stricken as irrelevant, redundant, impertinent and immaterial.)

"(14) Plaintiff further avers that, pursuant to the foregoing license contract, and immediately after its execution, the plaintiff, on or about January 23, 1904, filed its bill of complaint in the Circuit Court of the United States for the Northern District of Illinois, at Chicago, against the Universal Accountant Machine Company, setting forth the said Felt patent and its ownership by plaintiff, and infringement of claims one, two and four thereof by said Universal Accountant Machine Company, and praying for an injunction against infringement of said patent; that said Universal

Accountant Machine Company made answer in said suit; that the name of said Universal Accountant Machine Company was, during the pendency of said suit, changed to Universal Adding Machine Company, and that the suit continued against the defendant therein by that name; *that the plaintiff necessarily expended in the prosecution of said suit against said Universal Adding Machine Company the sum of $14,521.* (Portion italicized stricken as irrelevant, redundant and immaterial.)

"(24) Plaintiff further avers that said defendant afterwards acquired control of a majority of the capital stock of Universal Adding Machine Company, and, prior to the beginning of this suit, said Burroughs Adding Machine Company bought all of the assets of said company; that, prior to the beginning of this suit, said Burroughs Adding Machine Company bought all of the assets of said company; that, prior to the beginning of this suit, the defendant bought all of the assets of the Pike Adding Machine Company, a corporation engaged in the business of making and selling adding machines which infringed said Felt patent; that, prior to the beginning of this suit, the defendant, through its officers and directors, acquired about 49% of the stock of Adder Machine Company; and that, at the time of the institution of this suit, the only manufacturers in the United States of adding machines employing transversely movable wide-frame paper carriages were plaintiff, defendant, said Universal Adding Machine Company, Adder Machine Company, and Dalton Adding Machine Company; and that, following the said decree in the United States Circuit Court, the plaintiff immediately notified the said Dalton Adding Machine Company and Pike Adding Machine Company immediately to cease further infringement of said Felt patent. (Stricken as irrelevant, redundant and immaterial. No error is assigned as to the ruling in striking Par. 24.)

"(25) Plaintiff avers that Universal Adding Machine Company defended said suit for infringement on the ground,

among others, and averred in its amended answer, that said
Felt had made a 'practical and operative machine' contain-
ing said improvements in January, 1890, and averred that
the same was 'capable of useful operation,' and that Felt
had put the same in public use and on sale more than two
years before his application in 1898 for a patent on said
invention; that said Universal Adding Machine Company
did not defend suit on the ground that said machine was in-
operative or an impractical experiment, but, on the contrary,
contended in the United States Circuit Court and on appeal
in the United States Circuit Court of Appeals that said ma-
chine was practical and operative; that the proofs taken in
said cause showed that Felt had made the invention described
in said letters patent, and a full-sized working model incor-
porating said working invention, during the year 1890, and
failed to show the valid reasons that actually existed for
Felt's failure to put said machine on the market, or to make
application for a patent on said invention during the eight
years intervening between the date of the invention and the
date of his application for letters patent on said invention.
The plaintiff was advised by its counsel and believed that ab-
sence of proof upon this point constituted no proof of aban-
donment; that consequently plaintiff did not show, as it
might have done, that said Felt was almost constantly en-
gaged during said eight years in the attempt to raise funds
to get his said invention on the market, and to raise the sum
of over $500 which was necessary to pay for the preparation
of the application for said patent, and to pay the government
fees therefor, and that he had been unable to do so; and that
he had not abandoned said invention during the interval be-
tween the date of the invention and the date of application
for the patent; that the United States Circuit Court in said
suit against the Universal Adding Machine Company held
that the defense of abandonment of the invention had not
been made out.   (Stricken as irrelevant, redundant and im-
material, and as being a collateral attack upon a judgment

and an attempt to impeach judicial proceedings and the result thereof.)

" (26) Plaintiff further avers that, pursuant to the plan of the Burroughs Adding Machine Company to accept all the benefits of the decree of the United States Circuit Court and then cause said decree to be reversed, if possible, Burroughs Adding Machine Company, through its said counsel, Edward Rector, prepared and, on April 16, 1906, filed in the United States Circuit Court of Appeals, to which court said Universal Adding Machine Company had taken said decree on appeal, a brief attacking the validity of said Felt patent, and that said brief was filed in said cause in which Universal Adding Machine Company was appellant and plaintiff here appellee, and was filed over the objection of Comptograph Company, and asserted various positions hostile to the validity of the Felt patent; among others, that the said model of 1890 was impractical, and incapable of useful operation, and was an abandoned experiment; that, by reason of the averments of the amended answer of the Universal Adding Machine Company in the lower court, it was not open to the Universal Adding Machine Company to make the defense that said machine of 1890 was an abandoned experiment or incapable of useful operation; that said brief stated as a fact that said Felt had done nothing with said invention between 1890, and 1898, which statement was contrary to the fact, and was only supported by the absence of proof upon the point in the record; that said brief sided substantially with the appellant in that case—the Universal Adding Machine Company; that said brief made false assertions of matters of alleged fact that would have been material to the issues if true, that did not appear in the record, and that were adverse to the contentions and interests of the Comptograph Company and to its case on said appeal. That said brief manifested a desire on the part of the Burroughs Adding Machine Company to have said Felt patent declared invalid; that it insisted upon points of alleged invalidity, not insisted upon

by the appellant, Universal Adding Machine Company. (Stricken as irrelevant, redundant and immaterial, and as being a collateral attack upon a judgment, and an attempt to impeach judicial proceedings and the result thereof.)

"(28) That Burroughs Adding Machine Company took no part in the trial or proceedings in said cause in the United States Circuit Court or in the United States Circuit Court of Appeals except as herein stated. (Stricken as irrelevant, redundant, and immaterial.)"

There seems to be no argument on the striking of this paragraph.

"(35) Plaintiff further avers that, in March, 1910, plaintiff brought suit for infringement of said claims one, two and four of said Felt patent against said Adder Machine Company, a corporation organized and existing under the laws of Pennsylvania; that said suit last mentioned was brought in the United States Circuit Court for the District of Columbia; that said Adder Machine Company answered the bill in the said cause, and testimony had been taken therein prior to the institution of this suit. *That the plaintiff herein has necessarily expended in the prosecution of said suits against The Adder Machine Company of New Jersey and Adder Machine Company of Pennsylvania (on account of infringement of claims one, two and four of said Felt patent) more than $6,000.* (Part in Italic stricken as irrelevant, redundant, and immaterial.)"

All the foregoing matters were stricken August 10, 1914. Appellant's counsel present 15 points in support of the errors assigned. Of these 15 points, all of the first 14, except the 7th and 8th, attack directly or indirectly the ruling of the court in striking parts of the amended fourth count; one, the 15th, calls in question the ruling of the trial court in sustaining the defendant's demurrer to that count. The portions of the fourth count which were stricken solely upon the ground that they were irrelevant, redundant, or immaterial, are those contained in Paragraphs 4, 6, and a part of 10, a

part of 14, and 35 (also 24 and 28, but as to these two they are not argued), and are covered by appellant's points 9, 10 and 13.

The portions of the count which were stricken on the ground that they seek to vary the terms of a written contract, are those contained in Paragraphs 8 and 9 (and 37½, which will be referred to later), and are covered by appellant's points 6, 11 and 12.

Those parts which were stricken upon the ground that they are and constitute a collateral attack upon a prior judgment, are those contained in Paragraphs 25 and 26, and are covered by appellant's points 1, 2, 3 and 14.

Other points in appellant's brief relate to rules of interpretation and argument, seeking to substantiate its claim that the clause of the contract saying that if, as a final result of the test suit or any subsequent litigation upon the patent in question, "said letters patent shall be declared invalid," the defendant "shall have the right to surrender this agreement and license and be relieved of any further obligations thereunder," does not mean that the defendant shall have the right to surrender the contract, and shall be relieved of all further obligations, but that, unless said company exercises its right to surrender the contract, it shall not be relieved of any obligations thereunder. So that, in determining the questions presented, we think they may be grouped substantially as above indicated.

1. Section 3618, Code, 1897, provides for striking irrelevant and redundant matter from pleadings on motion, and it has been held that irrelevant or immaterial matter is anything stated in a pleading which, if established on the trial, would not entitle the party to, or aid him in obtaining, the relief demanded, or sustain the defense pleaded; and

1. PLEADING: irrelevant and redundant matter: motion to strike.

that a party is aggrieved in having to answer a pleading containing such matter. *Johns v. Pattee,* 55 Iowa 665. See also

*Specht v. Spangenberg,* 70 Iowa 488; *Williams v. Williams,* 115 Iowa 520.

2. Referring now to Paragraphs 4, 6, and parts of 14 and 35, which were stricken. It is thought that the averments of Paragraph 4 are proper to be considered in the interpretation of the contract, and that it set

2. PLEADING: matters provable without pleading: circumstances preceding contract: motion to strike.

out the circumstances leading up to the execution of the contract; that the purpose of the allegation in Paragraph 6 is to show the condition of the subject-matter with reference to the interpretation to be put upon Section 7 of the contract; and that the portions of 14 and 35 which were stricken should not have been expunged, because the averments thereof show that plaintiff was performing its obligation in good faith, but show also the unreasonableness of defendant's construction that the contract obligated plaintiff to keep on suing infringers, without a corresponding obligation on the defendant either to surrender the license or to continue to pay royalties. But as to the fourth paragraph, we think that, even if the plaintiff had the right to offer proof of the facts there alleged in order to apprise the court of the situation of the parties when the contract was made, the absence of such allegation would not have prevented it from doing so, had the evidence, when offered, been regarded by the court as helpful.

There is some discretion in the trial court in these matters, and we think no prejudice could result from striking these allegations, even though it be conceded that, strictly speaking, the allegations should not have been stricken. What has been said applies substantially to the allegations in Paragraph 6. As to parts of 14 and 35, it nowhere appears that defendant makes any claim that plaintiff was not performing its obligations under the contract in good faith. It was plaintiff's duty to do that, and the costs of litigation or the amount expended by plaintiff in undertaking to establish the validity

of the patent, as it had contracted to do, constitute no element of damage recoverable in the suit at bar.

3.    Referring now to the allegations which, it is claimed by defendant, seek to vary the terms of a written contract, which allegations are contained in Paragraphs 8, 9 and 37½.

3. EVIDENCE: parol as affecting writing: preliminary negotiations: erroneous construction of unambiguous words.

This is one of the points strongly urged by appellant; but, in our opinion, there was no error in sustaining the motion to strike as to this matter.

The substance of the averment in Paragraph 8 is that, during the negotiations, and before the execution of the contract, the attorney for defendant's assignor advised plaintiff, in writing and by letter, as we understand it, that the option in Paragraph 7 of the contract must be left to the assignee, as to whether, in the event the patent should be declared invalid, it should surrender the contract or continue to pay royalty; and Paragraph 9 alleges that plaintiff executed the contract relying upon such interpretation. Paragraph 37½ may be considered in this same connection, and relates to the understanding of the parties, and is as follows:

"(37½) And the plaintiff further avers that the proper construction of said agreement and license is that the licensee thereby agreed to pay royalties on all adding machines employing transversely movable wide-frame paper carriages which should be manufactured by the licensee prior to January 1, 1906, and also upon those manufactured by the licensee after any final judicial decision or decree declaring said patent invalid, and prior to the surrender of said agreement and license; and that said American Arithmometer Company so understood said agreement and license, and had reason to believe, and did believe, at the time said agreement and license was executed, that the licensor, Comptograph Company, so understood said agreement and license, and that said Comptograph Company did so understand said agreement and license at the time of its execution. (This is the

amendment of November 30, 1914. It was stricken on December 28, 1914, as irrelevant, redundant, immaterial and incompetent, and as seeking to interpret and vary the terms of a written instrument.)''

It is not claimed by appellant that there was any fraud, accident or mistake in drawing the contract, and no reformation is asked. Plaintiff's claim is that these matters are proper to be considered in the interpretation of the contract. This might be so, if there was ambiguity in the contract. But it will be seen later that there is no ambiguity.

Appellee contends that this letter or writing, being a part of the negotiations leading up to the contract, is merged in the contract, and that the provisions of the contract are plain, and that to admit such evidence would vary the terms of the writing. Although there are exceptions to the general rule (but the plaintiff has not brought itself within any of the exceptions) that, in the absence of fraud, accident or mistake, parol contemporaneous evidence is inadmissible to contradict or vary the terms of a written instrument (1 Greenleaf, Ev., Sec. 295 [Lewis Ed.] ; *Taylor v. Trulock,* 55 Iowa 448–450), in the instant case, there is no claim that the letter or writing was a part of the contract. As said in *Gongower v. Equitable Mut. L. & E. Assn.,* 94 Iowa 499, in the absence of fraud, accident or mistake, a contract is to be understood by the language employed therein, and not according to the views of its meaning intended by the person who drew it. See, also, *Kelly v. Chicago, M. & St. P. R. Co.,* 93 Iowa 436–445. *Mt. Vernon Stone Co. v. Sheely,* 114 Iowa 313, 316.

In considering the admissibility of parol evidence, in the form of written letters, to aid in the construction of a contract, the Supreme Court of Illinois, where this contract was drawn, stated the rule this way:

''We cannot see that these letters were material as they referred to transactions prior in date to any of the items in the bill of particulars attached to the declaration, and, so

far as they had reference to matters affected by the contract of July 1, 1886, their contents were merged into and supplanted by that contract. When parties, after whatever previous preparation, reduce their agreement to writing, such written agreement is 'the final consummation of their negotiation, and the exact expression of their purpose.' What has preceded it, if not incorporated into it, is regarded as intentionally rejected." *Graham v. Sadlier,* 165 Ill. 95, 98 (46 N. E. 221).

It is the province and duty of the court to construe a written contract, and it should be construed, if possible, so as to give effect to all of its parts. It seems that the parties to this action were in dispute as to its proper interpretation, and that they did not act upon either the plaintiff's or defendant's interpretation of it. However this may be, we understand the law to be that, where the parties to an agreement have acted upon a certain interpretation of it, this interpretation will not be followed by the courts where the contract is not ambiguous, since a construction contrary to the plain meaning of the instrument is necessarily erroneous, and the parties are not bound by their erroneous construction of it. *Spencer v. Millisack,* 52 Iowa 31; also *Railroad Co. v. Trimble,* 10 Wall. (77 U. S.) 367. But where there is doubt as to the proper construction of an instrument, the construction put upon it by the parties is entitled to consideration. *Railroad Co. v. Trimble,* supra.

A written instrument is ambiguous only when found to be of uncertain meaning by persons of competent skill and information. 1 Greenleaf on Ev. (Lewis Ed.), Sec. 298.

Section 4617 of the Code, 1897, provides that, when the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other party understood it; but it has been held under this that the statute cannot be invoked to show that a written contract was,

4. CONTRACTS: construction: conflicting constructions of plain words: statute rule.

according to the understanding and intent of the parties, to be performed in a way different from that expressed in the contract itself. *Walker v. Manning,* 6 Iowa 519.    The statute does not apply to agreements which are plain and unambiguous, but only to such as are susceptible of different constructions.    *Rouss v. Creglow,* 103 Iowa 60.    If the contract is clear and explicit, the statute does not apply.    There must be some ambiguity in the contract itself.    *Peterson v. Modern Brotherhood of Am.,* 125 Iowa 562; *Inman Mfg. Co. v. Cereal Co.,* 133 Iowa 71.    What is here said in regard to the principle that a motion to strike is the proper remedy, applies to the other portions stricken.

4. Turning now to the construction of the contract, it is thought by appellant that the opinion of the lower court in regard to this matter was influenced by the erroneous conception that a patent which has been adjudged invalid by a court of last resort is invalid as to everybody, and therefore worthless, and that no one would be willing to contract for the payment of royalties for such a patent.    And it is argued by appellant that this misconception was the basis of the court's view that Section 7 of the contract meant that the licensee should be relieved from the payment of royalties, even if it did not surrender the license.    They contend that a patent suit is a proceeding *in personam,* and not *in rem,* and cite cases holding that a decree declaring the invalidity of the patent is not a proceeding *in rem,* and does not prevent the same or a different plaintiff from prosecuting a suit against another defendant, and establishing its validity upon different or even the same evidence.

And they say that, consequently, a patent, though declared invalid by one or more courts, may be of great value. This may be so, under some circumstances; but the trouble with appellant's contention at this point, as applied to the facts of the instant case, is, it seems to us, that, by the terms of the contract, plaintiff was to bring a test case to determine whether the patent in question was valid or invalid, and by

the terms of the contract, the payment of said royalties by defendant was made to depend on the question as to whether the patent was valid. Such a suit was prosecuted, in which it was finally determined that the patent was not valid.

The contract seems to have been carefully drawn. It was settling a controversy of long standing, which involved large interests. As written, it undoubtedly expressed the real intention of the parties. Paragraph 7 of the contract recites:

"This contract is based upon the assumption that the aforesaid letters patent are good and valid in law, and that they can be, and will be sustained by the courts, and given a construction which will secure to the parties hereto a substantial monopoly of the manufacture, use, and sale of all adding machines employing transversely movable wide-frame paper carriages."

To obtain the objects above expressed, to settle a pending controversy as to a claimed infringement of the patent, and to provide the terms and conditions under which royalties should be paid, the contract provided for three things:

1. To settle the claim of infringement of the patent prior to January 1, 1904. For this claim of infringement, the defendant paid $12,209, $5,000 cash down, and $7,209 thereafter, as provided for by the contract; and the first proposition covered by the contract was finally settled and determined by the defendant's paying the sum stipulated.

2. Pending a test case as to the validity of the patent, which plaintiff undertook, by action in court, to sustain, and covering a period of two years, from January 1, 1904, to December 31, 1905, a period which was considered sufficient to determine the test case, the defendant agreed to pay the sum of $1.00 per machine manufactured during said period, further agreeing that a minimum sum of $10,000 should be paid before the conclusion of the test case, of which the $5,000 paid upon the signing of the contract should be a part. (Paragraph 5 of contract.) As a matter of fact, there were paid as royalties, prior to December 31, 1905, $12,209 (including

the advance payment of $5,000 above mentioned), which paid in full the first two conditions under which compensation was to be paid.

3.   The third right granted, as expressed in the language of the contract, was as follows:

"Par. 2.   Said first party hereby grants to the said second party and its successors and assigns, from and after January 1, 1904, the sole and exclusive right, license and privilege (except as hereinafter specified) to manufacture, use and sell machines embodying the invention described and claimed in the aforesaid letters patent throughout the United States and the territories thereof, and Canada, and for export to other foreign countries, for the full term of said letters patent, and any extension or re-issue thereof which may be hereafter granted."

The contract then expressly stated what the plaintiff must do to earn additional compensation.

It was provided in Paragraph 3 of the contract:

"Said first party agrees to promptly bring suit upon said letters patent against existing and future infringers thereof, and to diligently and vigorously prosecute such suit or suits to a final determination, for the purpose of judicially determining the scope and validity of said letters patent and of suppressing infringements thereof and securing a monopoly of said invention to the parties hereto."

And, as emphasizing the object to be attained by the parties, and the conditions upon which plaintiff was to be entitled to any further or additional compensation, other than what had already been paid and provided for, Paragraph 7 of the contract, before set out, states:

"This contract is based upon the assumption that the aforesaid letters patent are good and valid in law," etc.

The consideration which appellant seeks to recover in this controversy is based, according to the terms of the contract, upon the plaintiff's having a valid patent, which by a final adjudication should be sustained, and, as a result of

such final adjudication, a monopoly of the manufacture, use and sale of plaintiff's claimed patent would be preserved "for the full term of said letters patent, and any extension or re-issue thereof which may be hereafter granted."

The appellant has failed to perform the conditions upon which it would be entitled to this additional compensation.

In the following cases, the only ones in which the validity of this patent has been involved, the patent has been held invalid. See *Universal Adding Mach. Co. v. Comptograph Co.*, 146 Fed. 981 (C. C. A.); *Comptograph Co. v. Adder Mach. Co.*, 41 App. D. C. 427. As a result of these decisions, the plaintiff's patent is invalid, and it did not create a monopoly. In other words, the defendant, after these decisions were rendered, received no right nor benefit from the contract herein sued on.

The grant in the license contract, in terms, was "for the full term of said letters patent, and any extension or re-issue thereof which may be hereafter granted," and, as hereinbefore stated, the contract was "based upon the assumption that the aforesaid letters patent are good and valid in law," and "will secure to the parties hereto a substantial monopoly of the manufacture, use and sale of all adding machines employing transversely movable wide-frame paper carriages."

This grant was without condition or limitation. It was absolute, and for the life of the patent. The additional price to be paid was contingent, conditioned upon the validity of the patent and the establishment of a monopoly.

This contract, so far as consideration is concerned, is separable. The consideration that has been earned has been paid. This lawsuit is to collect a consideration that has not been earned, and, by the express terms of the contract, is not due.

5. CONTRACTS: construction: severable contracts.

Judge Sanborn, in the case of *Comptograph Co. v. Burroughs Adding Machine Co.*, 175 Fed. 792, construed this contract in an action between these same parties. Construing the contract now in controversy, Judge Sanborn said:

"The proper construction of the license contract I think is that the $5,000 paid down was for a release of any possible damages and profits on adding machines made by the licensee up to a time coincident substantially with the making of the contract, and that the agreement to pay a dollar a machine after that time pending the first suit to test the patent, but not later than December 31, 1905, if the suit should be decided after that date, was the consideration for the license to make, use, and sell the patented invention from January 1, 1904, to the end of the patent term."

And, in construing the provisions providing for additional compensation, Judge Sanborn said:

"Therefore this grant of the right to make, use, and sell was made for the payments made up to December 31, 1905. The sum to be paid was its consideration. In a certain event the price was to increase; in another to remain as it was. Thus the price was contingent, not the grant itself. That was to remain vested forever, whatever might happen to the lawsuit. The patent estate or right which the licensee bought and paid for was by no means contingent or conditional, but vested and absolute. No condition whatever, subsequent or otherwise, attached to it. All that was conditional was the price to be paid for the transferred property right. . . . The title to the invention had passed, at a certain price. That price, it is true, was subject to change, upon the contingency of the patent being sustained. If that event did not happen, both title and price were to remain the same."

The trial court followed these decisions, and, we think, properly so.

If the foregoing construction is not correct, then the defendant would be placed in the position of paying a substantial royalty for the use of a patent that has been held invalid; in other words, the construction contended for by the appellant would require the appellee to pay out large sums without having received any benefit or consideration therefor.

In this last named case, on December 29, 1909, the U. S. Circuit Court, District Judge Sanborn presiding, sustained defendant's demurrer to complainant's bill, praying cancellation of the contract of January 20, 1904, declared on in the case at bar, the court construing and interpreting the meaning and language of the contract. This is the case which rules the case at bar, if not under the doctrine of *res adjudicata,* as an authority of such direct and persuasive a character as to have the force of a prior adjudication.

In *Comptograph Co. v. Burroughs Adding Machine Co.* (C. C.), 183 Fed. 321, the last case before referred to and the case between the same parties, in 175 Fed. 787, were affirmed. In January, 1911, petitions for writs of certiorari were denied by the Supreme Court of the United States. 219 U. S. 586 (55 L. Ed. 347). *Van Dyke v. Doughly* (Mich.), 140 N. W. 627, has some bearing.

5. It is next contended by appellant that, when the licensee, the Burroughs Adding Machine Company accepted and used the benefits of the decree of the United States Circuit Court establishing the validity of the Felt patent, believing the patent invalid, and that the decree would be reversed, and intending to assist in bringing about the reversal, the condition upon which the licensee was to become liable for the ten-dollar royalty was thereby converted into a mere warranty of the licensor that the patent would be sustained on appeal. The licensee thereby became liable for the ten-dollar royalty following the reversal, and the licensee's remedy became a mere right of counterclaim for damages, if any, it suffered by the failure of the licensor to maintain the decree on appeal. This results from the doctrine that, where a condition has been performed in a substantial part, and the benefits of such performance are accepted by the beneficiary of the promise, with the knowledge that the condition is not being fully performed, the condition loses its character as a

**6. Contracts:** conditions precedent: partial performance: acceptance of benefits: effect.

condition, and becomes a mere warranty, affording no defense to an action, but giving only a right to counterclaim for damages (citing cases).

The condition upon which the Burroughs Adding Machine Company was obligated by the contract declared on to pay royalties to the Comptograph Company after December 31, 1905, is a condition precedent, and the obligation of the former to pay royalties after said date depended upon the fulfillment of the condition. It was not fulfilled, and never can be fulfilled.

Says Mr. Judah P. Benjamin, in his famous treatise:

"Although a man may refuse to perform his promise till the other party has complied with a condition precedent, yet, if he has received and accepted a substantial part of that which was to be performed in his favor, the condition precedent changes its character and becomes a warranty, or independent agreement, affording no defense to an action, but giving right to a [counterclaim] for damages. The reason is, that it would be unjust under such circumstances that a party who has received a part of the consideration for which he bargained should keep it and pay nothing because he did not receive the whole." Benjamin on Sales (6th Ed.), Sec. 564.

But he adds:

"Apart from this modification of the principle, . . . the rule is very general and uniform that the condition precedent must be fully and strictly performed before the party on whom its fulfillment is incumbent can call on the other to comply with his promise." Benjamin on Sales (6th Ed.), Sec. 565.

The condition referred to by appellant is that, if the test suit which the plaintiff agreed promptly to bring and to prosecute to final determination, failed to sustain the Felt patent, and thus secure to the parties a patent monopoly of the patented invention, the defendant would be relieved of

all obligations to pay royalties after December 31, 1905. The test suit was brought, and final determination of it had on August 11, 1906. This final determination held the patent to be void. As stated, the plaintiff now claims that the condition was converted into a warranty or was waived, either of which would relieve plaintiff from its failure to fulfill the conditions, and would bind the defendant to continue to pay royalties, notwithstanding the written contract. The allegations of the amended fourth count which set out the acts and conduct of the defendant and its general counsel, relied upon by plaintiff, are substantially these:

Paragraph 18 alleges that, when the contract of January 20, 1904, was signed, sealed and delivered, the plaintiff was advised by its counsel and believed, and ever since has believed, that the Felt patent was good and valid in law, but that Mr. Rector considered it bad, and so advised defendant's officers; that Mr. Rector, who, ever since the organization of the defendant, in January, 1905, has been a director and the general counsel of the defendant corporation, has always been of this belief.

Paragraph 19 alleges that Mr. Rector attended the trial of the ''test'' suit in the *nisi prius* court before Judge Kohlsaat, and that, from what he then learned, he, and through and by him the defendant, became convinced that the Kohlsaat decree sustaining the patent was erroneous, and ought to be, could be and would be reversed upon appeal; and that, if it were reversed and the Felt patent declared void upon appeal, the defendant would be released from the payment of a lot of money by way of royalties under the contract of January 20, 1904; but that, pending the appeal, it would be a good thing to make capital out of the Kohlsaat decision by frightening off competitors with threats of infringement suits.

In Paragraphs 20, 21 and 22, the plaintiff says that, by means of ''newspaper ads.,'' ''circulars'' and ''post cards,'' the defendant announced the Kohlsaat decision to the world,

thus terrorizing competing adding machine makers, and lessening competition; that, by means of the Kohlsaat decision, aided by its campaign of publicity, the defendant was greatly benefited; that the reversal of the Kohlsaat decision by the United States Circuit Court of Appeals was brought about by the filing of the *amicus curiae* brief of Mr. Rector, which, it is said, convinced the court that the patent was invalid. As we understand it, the doctrine of conversion of a condition is only held applicable where the other party has received and accepted a substantial part of that which was to be performed in its favor. In this case, no part of the contract for which compensation is now claimed has been performed, nor has defendant received or accepted any part of the goods for which it has not paid. As before stated, there were three things defendant contracted for:

1. A settlement for machines manufactured prior to January 1, 1904. For this it agreed to pay, and has paid, $5,000.

2. To pay at least an additional $5,000 for the right to manufacture these machines pending the determination of the test case, from January 1, 1904, to December 31, 1905. For this it has paid in full, $7,209.

3. To pay additional royalties conditional upon the adjudication and sustaining of the validity of the patent, and the insuring of a monopoly. There having been a total failure of performance as to this third condition, there is nothing due on account of same.

The grant of the right to use this patent during its life was in no wise conditioned. The payment of the additional compensation now sought to be recovered was.

No case cited by appellant sustains the claim that the conditions in this contract should be construed as a warranty, or that appellee has received any part of the performance which it has not fully and completely paid for.

6. It is next contended by appellant that the accept-

ance and use by the licensee of the benefits of the *nisi prius* decree establishing the validity of the patent, coupled with

7. CONTRACTS: waiver: waiver of condition: hostile attitude of contracting party.

the licensee's consent that the decree be reversed, which consent was evidenced by the licensee's brief in the Court of Appeals, asking that the decree be reversed, constituted a waiver of the condition of the contract requiring that the licensor sustain the patent by final decree. The facts alleged bearing upon this point have been already referred to. It occurs to us that, in advertising the fact that the patent had been sustained by the decree in the *nisi prius* court, defendant did only what it had a right to do, and what it had paid for. So long as the decree of the lower court stood, the patent was valid, and had been sustained. There were no untrue statements made in the advertisements, and no rights exercised by defendant that had not been paid for. It appears that plaintiff was named in these advertisements, and doubtless shared in the benefits thereof, if any there were. Defendant accepted no benefits other than it was entitled to by the provisions of the contract. We think no waiver of condition can be predicated upon such a state of facts. Nor do we think there was any waiver by the filing of the brief in the Circuit Court of Appeals by Mr. Rector. Under the circumstances shown, he had a right to appear as *amicus curiae* in the test case, and contest the validity of the patent. It was the law, and not any act of defendant, which made the patent void. The same facts in regard to the conduct of Mr. Rector in filing the brief were pleaded in two cases between the parties to this suit, in 175 Fed. 792, and 183 Fed. 321, before cited, in which it was held there was no impropriety in filing the brief. We can do no better than adopt the reasoning of those cases. In the last case just referred to, the court said:

"Under this license agreement, appellee and its assignor has paid appellant $12,209, which, admittedly, covers all the royalties due or claimed to be due thereunder, at the time

that the conduct took place which is said to have been a repudiation, renunciation or forfeiture, upon the part of appellee, of the license; and up to that time, too, appellee is admitted to have fully performed all its obligations to appellant under the license contract.   The conduct of appellee, urged as a repudiation, renunciation or forfeiture of the license, was the filing of a brief by appellee's counsel in this court, on behalf of appellee, in the suit of appellant against the Universal Adding Machine Company, supra, brought by appellant pursuant to, and in accordance with, the terms of the license contract, and determined first in favor of appellant in the circuit court, and subsequently, on appeal, against appellant in this court, as above stated; the brief being filed by leave of this court, obtained upon application of counsel for appellee, of which due notice was given to the parties in the then pending case, including counsel for appellant.   The record before us does not disclose any intention, upon the part of appellee, in the filing of that brief, to consciously repudiate, renounce or forfeit the license contract; on the contrary, it was clearly stated that they were appearing as persons interested in the license contract and under the terms of that license.   The record does not disclose that appellee took any part in the making of the record in the case of the *Universal Adding Machine Company v. Comptograph Company.*   So far as anything going into the record was concerned, in the way of facts upon which the judgment of the court was to be invoked, nothing was either added or subtracted by the brief filed by appellee.   The conduct of appellee was confined to an interpretation solely of that record for the benefit of the court.   There is nothing in the record before us showing that the appearance of appellee, by brief, resulted in the appellant's changing its position in any respect; all that appellant did, after appellee's brief was filed, was to write a letter to appellee, stating that it took the filing of that brief as a repudiation and renunciation of the license; to which no reply was sent.''

Again, the court said:

"But neither the moral policy, nor the practical consideration, on which this doctrine is founded, is present in this case. The suit in which appellee appeared by brief was not the case of the licensor against the licensee to enforce the contract. No license money was due under the contract. There was no refusal to pay license money. There was no putting of the licensor, as against the licensee, to prove his title while the licensee was eating off the stock. There was no real or moral policy why the brief should not be filed. Indeed, appellee was standing squarely upon its contract with the appellant. It had, as assignee of the American Arithmometer Company, settled and paid up for all past infringements; it had settled and paid up for all royalties thus far accrued; it agreed that in case the patent embodied a substantial monopoly of adding machines employing a transversely-movable wide-frame paper carriage, and after such monopoly had been judicially determined, it would pay additional royalties. These royalties were large; the monopoly itself, if upheld, was extremely valuable; and the question whether the monopoly had been judicially determined, was, therefore, a matter of deep consequence to appellee. Why may not the appellee, without violation of its contract, or violation of any ethical duty it owes to appellant, contribute toward clarifying the vision of the court by which this judicial determination is to be made both right and final? We see nothing in the conduct of appellee that is a renunciation, repudiation or forfeiture of its contract; on the contrary we see simply a precaution upon its part that the judgment of the court, upon which its additional obligations and its additional advantages alike depend, shall be as free from error as a full discussion of the record before the court can make the judgment that is to follow, free from error."

7. The ruling on the demurrer to the remainder of the amended fourth count involves substantially the questions already discussed; that is, the provisions and construction of

the contract. Appellant's argument on the error assigned as to this is very brief. We would not be justified in prolonging the opinion to refer again to these questions.

8. After the motion to strike had been sustained, plaintiff filed an amendment to the amended fourth count, again setting up some of the same matters contained in former pleadings, and this was stricken on motion of

8. PLEADING : motion to strike : pleading stricken matter.

defendant for that reason, and properly so. After careful and patient examination of the record, it is our conclusion that the judgment and rulings appealed from ought to be, and they are,—*Affirmed*.

DEEMER, WEAVER and EVANS, JJ., concur.